UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES—GENERAL

Case No.  CV 25-01678-MWF (SPx)                    Date:  May 5, 2025
Title:    Miguel A. Herrera v. Williams Scotsman, Inc. et al.

Present: The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

| Deputy Clerk: | Court Reporter: |
|---|---|
| Rita Sanchez | Not Reported |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**Proceedings (In Chambers):**  ORDER GRANTING PLAINTIFF'S MOTION TO REMAND AND DENYING REQUEST FOR FEES [21]

Before the Court is a Motion to Remand (the "Motion"), filed by Plaintiff Miguel A. Herrera on March 31, 2025. (Docket No. 21). Defendants Mobile Mini Inc. ("Mobile Mini") and Williams Scotsman, Inc. filed an Opposition on April 14, 2025. (Docket No. 25). Plaintiff filed a Reply on April 21, 2025. (Docket No. 27).

The Motion was noticed to be heard on **May 5, 2025**. The Court read and considered the papers on the Motion and deemed the matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78(b); Local Rule 7-15. The hearing was therefore **VACATED** and removed from the Court's calendar.

The Motion is **GRANTED** as to the remand but **DENIED** as to the request for fees. Defendant has failed to demonstrate that a fair reading of the Complaint puts more than $5,000,000 in controversy. However, Plaintiff is not entitled to attorneys' fees because Defendants' position was not objectively unreasonable.

**I.      BACKGROUND**

Plaintiff commenced this putative class action in Los Angeles County Superior Court on February 14, 2023. (Complaint (Docket No. 1-1)). Plaintiff brought the matter against Mobile Mini only. (*See generally id.*). Defendants represent in the Opposition that Williams Scotsman, Inc. is the successor in interest to Mobile Mini Inc. (*See, e.g.*, Opposition at 14). Plaintiff alleges that he was an hourly non-exempt

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 25-01678-MWF (SPx)                    Date:  May 5, 2025
Title:     Miguel A. Herrera v. Williams Scotsman, Inc. et al.

employee of Mobile Mini from "in or around September 2019 to November 17, 2022." (Complaint ¶ 4).

Plaintiff brought several claims for Mobile Mini's alleged failure to comply with California labor law, which were analyzed separately in Defendants' Notice of Removal, filed February 26, 2025.  (Docket No. 1).

First, Plaintiff brings a claim for Mobile Mini's alleged failure to pay overtime wages in violation of California Labor Code sections 510 and 1194.  (Complaint ¶¶ 37-46).  Defendants did not factor this claim into its amount in controversy estimate provided in the Notice of Removal and Defendants purported to "reserve[] the right to estimate additional amounts placed in controversy for these additional claims." (Notice of Removal at 23 n.3).

Second, Plaintiff brings a claim for Mobile Mini's alleged failure to permit meal periods in violation of California Labor Code sections 512 and 226.7.  (Complaint ¶¶ 47-53).  Plaintiff alleges that Mobile Mini did not "pay the one (1) additional hour of pay at Plaintiff's and the Meal Period Premium Wages Class' regular rate of compensation" when Mobile Mini paid a premium for "late, missed, short, on-premise, on-duty, and/or interrupted meal periods."  (*Id.* ¶ 50).  Plaintiff further qualifies this allegation by writing that:

> Specifically, [Mobile Mini] maintained a policy, practice, and/or procedure of failing to include all remuneration such as "Spiff Pay," "Driver Award Pay," [] "Salescat Pay" and/or "Vaccine Pay," for example, when calculating Plaintiff's and similarly situated employees' regular rate of compensation for the purpose of calculating and paying meal break premium wages.

(*Id.*).  Plaintiff further alleges "that Defendants did not provide all legally required and legally compliant meal periods, pursuant to Labor Code section 226.7 and the Wage Order."  (*Id.* ¶ 52).  Plaintiff alleges that these "policies, practices, and/or procedures . . . resulted in Plaintiff and similarly situated employees not being provided with all

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No.  CV 25-01678-MWF (SPx) | Date:  May 5, 2025 |
| Title:     Miguel A. Herrera v. Williams Scotsman, Inc. et al. | |

legally required and compliant meal breaks and/or not receiving premium wages to compensate them for such instances." (*Id.* ¶ 21; *see also id.* ¶ 1 (alleging that Mobile Mini failed "to authorize or permit all legally required and/or compliant meal breaks or pay meal break premium wages")).

On the basis of these allegations, Defendants argued in the Notice of Removal that they could assume a 100% meal period violation rate because of Plaintiff's allegation of a "pattern" or "practice" resulting in "employees not being provided with *all* legally required and compliant meal breaks." (Notice of Removal ¶¶ 44-46). However, Defendants instead put forward what they characterize as a "reasonable and conservative assumption of a 50% violation rate, which has also been approved by courts in the Ninth Circuit with the type of 'policy and practice' allegations here." (*Id.* ¶ 47).

Defendants hired an expert, Valentin Estevez, Ph.D., who reviewed Mobile Mini's "data to assess the potential exposure to Defendant based on allegations raised in" the Complaint. (Declaration of Valentin Estevez ("Estevez Dec.") (Docket No. 2-2) ¶ 5)). Estevez found that the putative class members worked at least 129,187 shifts of more than five hours (for which they would have been entitled to a meal break), with an average base hourly rate of $26.22. (Notice of Removal ¶ 48). Assuming a 50% violation rate, these figures put $1,693,642 in controversy for Plaintiff's meal break claims, according to Defendants. (*Id.*).

Third, Plaintiff brings a claim for Mobile Mini's alleged failure to authorize or permit rest periods, in violation of California Labor Code section 226.7. (Complaint ¶¶ 54-60). Plaintiff makes nearly identical allegations here—that Mini Mobile had "policies" or "practices" (*id.* ¶ 25) that caused Plaintiff and the putative class members not to receive payment for an additional hour of pay that included remuneration for "Spiff Pay," "Driver Award Pay," "Salescat Pay," and/or "Vaccine Pay." (*Id.* ¶ 57). As a result, Plaintiff and the putative class members did not receive "one (1) hour of additional pay at the regular rate of compensation for each workday that Defendants did not provide all legally required and legally compliant rest periods." (*Id.* ¶ 59).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 25-01678-MWF (SPx)**              **Date:  May 5, 2025**
**Title:     Miguel A. Herrera v. Williams Scotsman, Inc. et al.**

Here, Defendants again argued in the Notice of Removal that they could assume a 100% violation rate on these alleged facts, but instead assumed a 50% violation rate—that is, Defendants argued they could assume Plaintiff and the putative class members ***did not receive rest breaks*** on 50% of shifts.  (Notice of Removal ¶¶ 51-54).  Based on Estevez's calculations, there were 131,369 shifts in the class period for which Plaintiff and the putative class members would have been entitled to rest breaks at an average hourly rate of $26.22.  (*Id.* ¶ 55).  Assuming a 50% violation rate, these figures put $1,722,248 in controversy.  (*Id.*).

Fourth, Plaintiff brings a claim for Mobile Mini's alleged failure to pay wages for accrued sick pay in violation of California Labor Code section 246.  (Complaint ¶¶ 61-69).  As with overtime wages, Defendants did not factor this claim into their amount in controversy estimate.  (Notice of Removal at 23 n.3).

Fifth, Plaintiff brings a claim for Mobile Mini's alleged failure to provide complete and accurate wage statements in violation of Labor Code section 226.  (Complaint ¶¶ 70-79).  Plaintiff states that this claim is derivative of the claims above, and that the failure to provide all wages owed resulted in inaccurate wage statements.  (*Id.* ¶¶ 73-75).  Defendants assumed a 100% violation rate, because Plaintiff broadly alleged widespread "policy" and "practice" violations that would likely be reflected on each wage statement under the allegations in the Complaint.  (Notice of Removal ¶ 67).  Defendants cite California Labor Code section 226 for the proposition that the appropriate rate of recovery is $50 per employee for the first wage statement in which a violation occurred (as to that employee) and $100 per employee for each subsequent violation, in a per-employee amount not to exceed $4,000.  (*Id.* ¶ 66 (citing Cal. Labor Code § 226(e))).

Estevez found that there were 4,256 aggregate pay periods in the relevant time period, worked by 129 putative class members.  (*Id.* ¶ 68).  88 putative class members had their potential recovery capped at $4,000, because they worked during 41 or more pay periods during that time.  (*Id.*).  The remaining 41 employees had 41 "first pay" periods for which they would be entitled to $50 per violation, and 607 subsequent pay periods, for which they would be entitled to $100 per violation.  (*Id.*).  In total, Estevez

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No.  CV 25-01678-MWF (SPx) | Date:  May 5, 2025 |
| Title:    Miguel A. Herrera v. Williams Scotsman, Inc. et al. | |

calculated that this cause of action puts $414,750 in controversy ((88 capped employees x $4,000) + (41 first pay periods x $50) + (607 subsequent pay periods x $100)).

Sixth, Plaintiff brings a claim for Mobile Mini's alleged failure to timely pay all wages owed on separation of employment in violation of California Labor Code sections 201, 202, and 203. (Complaint ¶¶ 80-89). Plaintiff alleges that he and the putative class members did not receive "all wages earned and unpaid prior to separation of employment, in accordance with either Labor Code section 201 or 202" as a result of a "policy or practice" of Mobile Mini. (*Id.* ¶ 83). Specifically, Plaintiff alleges, in accordance with the allegations described above, that Mobile Mini failed "to pay regular rate overtime wages; meal period premium wages, and/or rest period premium wages." (*Id.* ¶ 84). Plaintiff alleges that he and members of the putative class are "entitled to continuation of their wages, from the day their earned and unpaid wages were due until paid, up to a maximum of thirty (30) days." (*Id.* ¶ 86).

In the Notice of Removal, Defendants argue that "it is reasonable to calculate the amount in controversy for this claim based on a 30-day penalty calculated at the putative class members' daily wage rate." (Notice of Removal ¶ 61). That is, Defendants assume a 100% violation rate for this claim and that all employees are owed the maximum amount. (*Id.*). Estevez found that 141 putative class members separated from employment in the relevant time period, with an average hourly rate among them of $25.66. (*Id.* ¶ 62). On these assumptions, Estevez therefore found that this claim put $868,334 in controversy. (*Id.*).

Seventh, Plaintiff brings a claim against Mobile Mini for unfair business practices in violation of California Business and Professions Code sections 17200, *et seq*. (Complaint ¶¶ 90-92). Defendants did not value this claim for purposes of the amount in controversy. (*See generally* Notice of Removal).

The above describes all of the claims brought by Plaintiff on behalf of himself and the putative class. (*See generally* Complaint). Defendants calculate these claims as placing $4,698,974 in controversy. (Notice of Removal ¶ 75). Defendants also

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 25-01678-MWF (SPx)     **Date:** May 5, 2025
**Title:**     Miguel A. Herrera v. Williams Scotsman, Inc. et al.

argue that Plaintiff may attempt to seek attorneys' fees in this action, and that 25% of the amount in controversy is a reasonable estimate of the amount placed in controversy by the prospect of Plaintiff's attorneys' fees. (*Id.* ¶¶ 71-74). Defendants estimate that $1,174,743 is placed in controversy by Plaintiff's attorneys' fees. (*Id.* ¶ 74).

In total, across all of Plaintiff's claims and the possibility of his attorneys' fees, Defendants estimate that $5,873,717 is in controversy in this matter. (*Id.* ¶ 75).

## II. LEGAL STANDARD

In general, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court[.]" 28 U.S.C. § 1441(a). A removing defendant bears the burden of establishing that removal is proper, including under CAFA. *See Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 684-85 (9th Cir. 2006) (per curiam) (noting the "longstanding, near-canonical rule that the burden on removal rests with the removing defendant"). If there is any doubt regarding the existence of subject matter jurisdiction, the court must resolve those doubts in favor of remanding the action to state court. *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) ("Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."). Indeed, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c); *see Kelton Arms Condo. Owners Ass'n, Inc. v. Homestead Ins. Co.*, 346 F.3d 1190, 1192 (9th Cir. 2003) ("Subject matter jurisdiction may not be waived, and, indeed, we have held that the district court must remand if it lacks jurisdiction.").

"In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008). Therefore, "[t]he ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will *actually* owe." *Id.* (emphasis in original).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 25-01678-MWF (SPx)  **Date:** May 5, 2025
**Title:** Miguel A. Herrera v. Williams Scotsman, Inc. et al.

"[A] damages assessment may require a chain of reasoning that includes assumptions." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1199 (9th Cir. 2015). "When that is so, those assumptions cannot be pulled from thin air but need some reasonable ground underlying them." *Id.* Thus, "a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Id.* at 1197. "The parties may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Id.* (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)). "[T]he defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged." *Ibarra*, 775 F.3d at 1197. "[I]f a violation rate cannot be justified by the allegations in the compliant, it must be justified by something else"; that is, evidence of the actual violation rate. *Perez v. Rose Hills Co.*, 131 F.4th 804, 807 (9th Cir. 2025).

## III.  ANALYSIS

In support of the Motion, Plaintiff argues that the matter should be remanded because, as a substantive matter, the $5,000,000 amount in controversy threshold is not met, and because removal was untimely. (*See generally* Motion). Because the Court determines that the amount in controversy requirement has not been met by a preponderance of the evidence, the Court need not reach the timeliness issue.

Defendants submit no evidence of the true violation rates, so the Court is left to determine whether Defendants' assumptions are reasonable in light of the allegations in the Complaint. *Perez*, 131 F.4th at 807. Defendants' estimation of the amount in controversy fails as to several of Plaintiff's claims because Defendants appear to misinterpret the allegations in the Complaint, leading to an inflation in the estimated value of Plaintiff's claims.

The Court begins by noting that Defendants' use of a 25% benchmark for the possible award of attorneys' fees ***is*** reasonable and supported. As the Court found in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 25-01678-MWF (SPx)          **Date:** May 5, 2025
**Title:** Miguel A. Herrera v. Williams Scotsman, Inc. et al.

the related case of *Mendieta v. Williams Scotsman*, No. CV 24-02090-MWF (SPx), 2025 WL 104095 (C.D. Cal. Jan. 15, 2025), "[w]hile the Ninth Circuit has rejected the application of a *per se* 25% attorneys' fee award in class actions in determining jurisdiction, the Court finds that a 25% attorneys' fee is a proper and commonly used benchmark." *Id.* at *4 (first citing *Barcia v. Contain-A-Way, Inc.*, No. 07cv938-IEG-JMA, 2009 WL 587844, at *6 (S.D. Cal. Mar. 6, 2009); then citing *Kearney v. Hyundai Motor Am.*, No. CV 09-01928-JST (MLGx), 2012 WL 13049699, at *11 (C.D. Cal. Dec. 17, 2012)).

      Regardless, however, Defendants' other estimations of the amount in controversy are misguided, and they are misguided in such a way that the Court has no evidence or rationale before it for determining what the amount in controversy truly is. And because the attorneys' fees are calculated as a percentage of the value of the other claims, the attorneys' fees estimate is necessarily unsupported. In other words, 25% of ***what?***

      First, Defendants' calculation of the amount placed in controversy by Plaintiff's meal break allegations does not accurately reflect the allegations in the Complaint. Though claiming that they would be justified in assuming a 100% violation rate based on the allegations in the Complaint, Defendants instead estimate a 50% violation rate based on those allegations. (Notice of Removal ¶¶ 46-47). The allegations that Defendants use as justification for this position are the allegations that Defendants had "policies, practices, and/or procedures" that "resulted in Plaintiff and similarly situated employees not being provided with ***all*** legally required and compliant meal breaks and/or not receiving premium wages to compensate them for such instances, all in violation of California law." (*Id.* ¶ 44 (emphasis in original) (quoting Complaint ¶ 21)). Defendants go on to state that under California law, employees who are not provided with compliant meal breaks are entitled to one hour of premium pay per day that a meal period was not provided. (*Id.* ¶ 45).

      It is here and at the next step where Defendants misinterpret the Complaint. Defendants place heavy emphasis on Plaintiff's allegation that he was not provided with "***all*** legally required and compliant meal breaks," and interpret this to mean that

**CIVIL MINUTES—GENERAL**          8

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 25-01678-MWF (SPx)          **Date:** May 5, 2025
**Title:**     Miguel A. Herrera v. Williams Scotsman, Inc. et al.

he was not *ever* provided with a compliant meal break. (*See, e.g.*, Notice of Removal ¶ 46). In *Torres v. SCIS Air Security Corp.*, No. CV 24-07019-MWF (BFMx), 2024 WL 4786137 (C.D. Cal. Nov. 13, 2024), the Court encountered similar allegations and arguments, and found as follows:

> Defendant appears to simply misread this allegation. This allegation does not mean that Defendant failed to pay Plaintiff and putative class members for *all* hours worked or that the failure to provide meal and rest breaks occurred every day to all employees. It simply means that Plaintiff and the putative class members were not paid for *every* hour worked, and that they did not receive certain meal and rest breaks to which they were entitled.

*Id.* at *3 (emphasis in original). Utilizing the "all" language as justification for a 100% or 50% violation therefore does not have any basis in the language of the Complaint.

Defendants also argue that the "policies, practices, and/or procedures" language allows them to assume a 100% or 50% violation rate. (Notice of Removal ¶¶ 44-46). This argument is a closer call but is ultimately unconvincing because it again rests on a misreading of the Complaint's allegations. Regarding the meal breaks in particular, two allegations invoke the "policies, practices, and/or procedures" language, and neither are appropriately read as Plaintiff claiming that he was *entirely* unpaid for noncompliant meal breaks.

> In paragraph 21 of the Complaint, Plaintiff alleges that
>
> The aforementioned policies, practices, and/or procedures of Defendants resulted in Plaintiff and similarly situated employees not being provided with all legally required and compliant meal breaks and/or not receiving premium wages to compensate them for such instances, all in violation of California law.

(Complaint ¶ 21).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 25-01678-MWF (SPx)                    Date:  May 5, 2025
Title:     Miguel A. Herrera v. Williams Scotsman, Inc. et al.

    The "aforementioned" policy Plaintiff refers to is in part the failure to provide noncompliant meal breaks—but as to the question of compensation, it is the "failure to pay meal break premium wages" at Plaintiff's appropriate rate of pay:

> In this case, on occasions when Defendants paid Plaintiff and similarly situated employees a "premium" wage for late, missed, short, on-premise, on-duty, and/or interrupted meal breaks, Defendants failed to pay the one (1) additional hour of pay at Plaintiff's and similarly situated employees' regular rate of compensation.  Specifically, Defendants maintained a policy, practice, and/or procedure of failing to include all remuneration such as "Spiff Pay," "Driver Award Pay,"[] "Salescat Pay" and/or "Vaccine Pay," for example, when calculating Plaintiff's and similarly situated employees' regular rate of compensation for the purpose of calculating and paying meal break premium wages.

(*Id.* ¶ 20).  Those allegations are repeated in the section of the Complaint that specifically concerns meal breaks.  The best reading of the Complaint is that Plaintiff did not receive compliant meal breaks 100% of the time, and when he was paid a premium for those instances, they did not sufficiently account for add-ons to his normal pay rate.  (*See id.* ¶¶ 47-53).

    The Notice of Removal is deficient because it does not take into account any of these nuances in Plaintiff's allegations.  Defendants assert that 50% is an appropriate violation rate given the "all" and "policies, practices, and/or procedures" language.  (Notice of Removal ¶¶ 44-47).  Defendants then calculated that Plaintiff and the putative class members did not receive meal premium pay of $26.22 per hour, per shift.  (*Id.* ¶ 48).

    That is not an appropriate calculation.  Based on the allegations in the Complaint, Defendants had two options: First, Defendants could have come forward with evidence showing the actual violation rate.  Second, Defendants could have calculated ***the difference*** between (1) the average hourly rate of $26.22 and (2) Plaintiff and the putative class members' actual rates after considering such additional

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 25-01678-MWF (SPx)**　　　　　**Date:  May 5, 2025**
**Title:**　　Miguel A. Herrera v. Williams Scotsman, Inc. et al.

compensation as "Spiff Pay, "Driver Award Pay," and the other categories that Plaintiff alleges were not factored into the meal break premiums.  Estevez, in performing the report that serves as the basis for his declaration ***did not*** factor in these categories of additional payment when coming to the $26.22 figure.  (Estevez Dec. at 3 n.1 ("These rates do not factor in any earnings that would be included in the regular rate of pay, such as non-discretionary bonuses and shift differentials, if any.")).  Accordingly, the Court has no evidence on which to determine that any particular amount of money was placed in controversy, because Defendants did not closely follow the language of the Complaint and put forward no direct evidence of the violation rate on their own.

　　The same problems arise with Defendants' calculation of the amount in controversy on Plaintiff's rest break claim.  There, Defendants also assumed a 50% violation rate, adjusting down from the 100% rate they argue would be appropriate on the basis of the Complaint's allegations.  (*See* Notice of Removal ¶¶ 51-57).  Plaintiff alleges in this claim that Mobile Mini had "policies, practices, and/or procedures" which "resulted in Plaintiff and similarly situated employees not being provided with ***all*** legally required and compliant rest periods and/or not receiving premium wages to compensate them for such instances, all in violation of California law."  (*Id.* ¶ 51 (emphasis in original) (citing Complaint ¶¶ 1, 25)).  In context, this allegation, like the meal period allegation above, refers to "aforementioned policies, practices, and/or procedures," with the aforementioned policy being the failure to provide rest break premiums at the appropriate premium rate in consideration of certain remuneration, including "Spiff Pay," "Driver Award Pay," and others.  (Complaint ¶¶ 24-25).

　　Far from Defendants' characterization, these allegations, read as a whole, do not allege "***without qualification***" that Mobile Mini had a "policy and practice to regularly deny rest periods."  (Notice of Removal ¶ 53 (emphasis in original)).  Rather, it is Plaintiff's allegation that such violations occurred on some ambiguous number of shifts more often than never, and that when that occurred, Mobile Mini had a practice of failing to pay ***the entirety*** of the premium which Plaintiff and members of the putative class were owed.  Because the Notice of Removal does not provide amount in controversy estimations that take these allegations into account, the Court simply

---

**CIVIL MINUTES—GENERAL**　　　　　　　　　　　　　　　　　**11**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 25-01678-MWF (SPx)                    Date:  May 5, 2025
Title:    Miguel A. Herrera v. Williams Scotsman, Inc. et al.

cannot determine what fraction of the estimated $1,722,248 rest period exposure is actually in controversy.  (*Id.* ¶ 75).

For similar reasons, the Court also finds Defendants' waiting time and wage statement estimations to be inflated.  Certain of Defendants' assumptions on these claims are reasonable—for instance, that a defendant may assume a 100% violation rate for such claims when facing a complaint broadly alleging that the defendant had a "policy" or "practice" of failing to provide compliant meal and rest breaks.  (Opposition at 11-12 (collecting cases)).  Again, however, the Court does not believe that a fair reading of the Complaint gives rise to those assumptions, because Plaintiff simply alleges that at some rate more frequently than *never* Plaintiff and the putative class members did not receive compliant meal and rest breaks, and that when Mobile Mini paid premiums for those violations, they were not paid at the appropriate rate.  Those allegations do not support the logical step necessary to get to 100% violation rates on the wage statement and waiting time claims: that the Complaint alleges the violations were widespread enough that they happened to every single employee in every pay period.

At its strongest, the Complaint alleges that Mobile Mini had "policies, practices, and/or procedures" which "resulted in Plaintiff and similarly situated employees not being provided with all legally required and compliant rest periods and/or not receiving premium wages to compensate them for such instances, all in violation of California law." (Complaint ¶ 25).  The Complaint makes a substantively identical allegation regarding meal breaks.  (*Id.* ¶ 21).  But for two reasons, the Court does not believe that this supports a 100% assumed violation rate:

*First,* this allegation actually refers to "*aforementioned* policies, practices, and/or procedures" and the "aforementioned" policy was the failure to pay premiums at the allegedly correct rates.  (*Compare id.*, *with id.* ¶¶ 18-20, 22-24) (emphasis added).

*Second,* the "and/or" language qualifies the statement that Mobile Mini had policies resulting in noncompliant meal and rest periods and leaves ambiguous whether

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No. CV 25-01678-MWF (SPx) | Date: May 5, 2025 |
| Title: Miguel A. Herrera v. Williams Scotsman, Inc. et al. | |

the policies resulted in widespread noncompliant breaks, noncompliant premiums for those breaks, or both. Therefore, the Court believes that reading the Complaint to support 100% violation rates for wage statement and waiting time violations substantially overreads the allegations of the Complaint by stripping out important context. Without any evidence of the actual violation rate and faced with an untenable reading of the Complaint, the Court cannot valuate either the wage statement or waiting time claims.

Accordingly, the Court finds that remand is appropriate. Of the five figures Defendants tabulate to get over the $5,000,000 threshold, all appear substantially inflated. Although the Court would not in any case guess at the value of Plaintiff's claims, the inflation in value is particularly problematic in a case like this where Defendants' calculations narrowly cleared the bar for federal jurisdiction. (Notice of Removal ¶ 75 (estimating $5,873,717 as the amount in controversy)).

However, the Court does not agree with Plaintiff that he should recover $7,800.00 in attorneys' fees incurred in litigating the Motion. (Motion at 23-24). While the award of fees incurred in such circumstances "lies within the trial court's discretion, and does not require a showing that the removal was in bad faith," *Padilla v. AT&T Corp.*, 697 F. Supp. 2d 1156, 1160 (C.D. Cal. 2009), the Court may award attorneys' fees "only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005).

The Court declines to find that Defendants' interpretation of the Complaint was objectively unreasonable, as the broad "policy" and "practice" language in certain areas of the Complaint required substantial analysis throughout this Order. Further, the timeliness issue (which the Court need not otherwise address on the merits) was at the very least close enough that Defendants' position was not objectively unreasonable.

Accordingly, the Motion to Remand is **GRANTED** and the action is **REMANDED** to Los Angeles County Superior Court. Plaintiff's request for attorneys' fees is **DENIED**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | | |
|---|---|---|
| **Case No.** | CV 25-01678-MWF (SPx) | **Date:** May 5, 2025 |
| Title: | Miguel A. Herrera v. Williams Scotsman, Inc. et al. | |

IT IS SO ORDERED.